## No. 16-4040

IN THE

# United States Court of Appeals

### FOR THE TENTH CIRCUIT

———————

THE SCO GROUP, INC.,
by and through the
Chapter 7 Trustee in Bankruptcy,
Edward N. Cahn,

*Plaintiff-Appellant,*

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

*Defendant-Appellee.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
THE HONORABLE DAVID NUFFER
CASE NO. 2:03-CV-00294-DN

## BRIEF OF DEFENDANT-APPELLEE INTERNATIONAL BUSINESS MACHINES CORPORATION

AMY F. SORENSON
AMBER M. METTLER
SNELL & WILMER, L.L.P.
  15 W. South Temple, Suite 1200
  Salt Lake City, UT 84101
  (801) 257-1900

EVAN R. CHESLER
DAVID MARRIOTT
CRAVATH, SWAINE & MOORE LLP
  Worldwide Plaza
  825 Eighth Avenue
  New York, NY 10019
  (212) 474-1000

*Attorneys for Defendant-Appellee International Business Machines
Corporation*

November 2, 2016

## ORAL ARGUMENT REQUESTED

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, IBM states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................iv

STATEMENT OF THE ISSUES.......................................................................1

STATEMENT OF THE CASE...........................................................................2

      A.    IBM, Its Products and Projects.......................................................3

      B.    SCO and Its Turn toward Litigation...............................................4

      C.    Most of SCO's Claims Are Finally Resolved Against It .....................5

      D.    The Rest of SCO's Claims Are Rejected .........................................6

      E.    This Appeal .................................................................................7

STATEMENT OF FACTS ................................................................................9

      A.    SCO's Unfair Competition Claim ..................................................9

      B.    SCO's Tortious Interference Claims ...............................................11

      C.    SCO's Proposed Copyright Claim .................................................13

SUMMARY OF ARGUMENT .........................................................................15

STANDARD OF REVIEW ..............................................................................17

ARGUMENT ...................................................................................................18

I.     THE DISTRICT COURT PROPERLY REJECTED SCO'S UNFAIR
     COMPETITION CLAIM .........................................................................18

      A.    SCO Adduced No Evidence of Unfair Competition by IBM .............18

           1.    SCO's Unfair Competition Claim Is Barred by the
               Independent Tort Doctrine .......................................................19

           2.    SCO's Fiduciary Duty Argument Is Unsupported...................23

           3.    SCO Lacks Standing To Pursue Its Claim...............................26

      B.    SCO's Unfair Competition Claim Is Untimely................................27

           1.    The JDA's Two-Year Limitations Provision Applies to
               SCO's Unfair Competition Claim............................................27

           2.    SCO's Claim Was Untimely Under the Two-Year
               Limitations Provision.............................................................29

      C.    SCO's Claim Also Is Preempted by Federal Copyright Law .............30

II.   THE DISTRICT COURT PROPERLY ENTERED SUMMARY
      JUDGMENT REGARDING SCO'S INTERFERENCE CLAIMS..............33

      A.    SCO Failed To Adduce Admissible Evidence of Actionable
            Interference by IBM ............................................................................33

            1.    IBM Did Not Interfere with Any of the Identified
                  Relationships..............................................................................33

            2.    SCO's Claim of Indirect Interference Is Baseless ....................36

      B.    IBM Did Not Cause Any Injury to SCO............................................37

            1.    SCO Failed To Identify Any Damages Resulting from
                  IBM's Alleged Interference ......................................................37

            2.    SCO Cannot Show IBM Caused the Alleged Damages ..........39

      C.    IBM Did Not Act by Improper Means and IBM's Alleged
            Conduct Is Privileged .........................................................................42

            1.    IBM's Alleged Acts Were Not Undertaken by Improper
                  Means ........................................................................................42

            2.    IBM's Alleged Acts Are Privileged as They Advance
                  IBM's Legitimate Competitive Interests ..................................43

III.  THE DISTRICT COURT PROPERLY DENIED SCO'S MOTION
      FOR LEAVE TO AMEND TO ASSERT A COPYRIGHT CLAIM ..........44

      A.    SCO Failed To Satisfy Rule 16(b) or the Court's Order of
            June 10, 2004......................................................................................44

      B.    Leave To Amend Is Improper Under Rule 15(a)................................46

            1.    SCO Unduly Delayed Moving To Amend Its Complaint ........47

            2.    IBM Would Have Been Unduly Prejudiced by the
                  Addition of the Copyright Claim ..............................................47

            3.    SCO Moved To Amend Its Complaint Solely in an
                  Attempt To Delay Further the Resolution of the Case ............50

            4.    The Proposed Copyright Claim Is Futile ..................................52

CONCLUSION .......................................................................................................56

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Diving and Marine Contractors v. Union Pac. RR*,
    No. 2:01 CV330, 2003 U.S. Dist. LEXIS 21560 (D. Utah July 10,
    2003) ................................................................................................41

*Astroworks, Inc. v. Astroexhibit, Inc.*,
    257 F. Supp. 2d 609 (S.D.N.Y. 2003) ...............................................23

*Banco Industrial de Venezuela, C.A. v. CDW Direct, L.L.C.*,
    888 F. Supp. 2d 508 (S.D.N.Y. 2012) ...............................................25

*Bauchman v. West High School*,
    132 F.3d 542 (10th Cir. 1997) ..........................................................52

*Birch v. Polaris Indus.*,
    812 F.3d 1238 (10th Cir. 2015) ........................................................44

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004) .......................................................30, 31

*Bryant v. Farmers Ins. Exch.*,
    432 F.3d 1114 (10th Cir. 2005) ........................................................35

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
    227 F.R.D. 313 (C.D. Cal. 2004) ......................................................38

*Cambridge Nutrition A.G. v. Fotheringham*,
    840 F. Supp. 299 (S.D.N.Y. 1994) ...................................................28

*Capitol Records, Inc. v. Naxos of Am., Inc.*,
    372 F.3d 471 (2d Cir. 2004) .............................................................27

*Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*,
    70 N.Y.2d 382 (N.Y. 1987) ..............................................................19

*Cosy Goose Hellas v. Cosy Goose USA, Ltd.*,
    581 F. Supp. 2d 606 (S.D.N.Y. 2008) ...............................................25

*Crocker v. Piedmont Aviation*,
  311 U.S. App. D.C. 1, 49 F.3d 735 (1995) ..........................................49

*D'Zurella v. Kansas*,
  No. 90-3202, 930 F.2d 33, 1991 WL 47101 (10th Cir. Mar. 18,
  1991) ...................................................................................................51

*Deer Crest Associates I, L.C. v. Deer Crest Resort Group, L.L.C.*,
  No. 2:04-CV-00220-TS, 2006 WL 722216 (D. Utah Mar. 15,
  2006) .............................................................................................19, 20

*Dona Ana Mut. Domestic Water Consumers Ass'n v. City of Las
  Cruces*,
  516 F.3d 900 (10th Cir. 2008) ...........................................................35

*Durham Indus. v. Tomy Corp.*,
  630 F.2d 905 (2d Cir. 1980) ...............................................................32

*Ehat v. Tanner*,
  780 F.2d 876 (10th Cir. 1985) ...........................................................32

*Farthing v. City of Shawnee, Kan.*,
  39 F.3d 1131 (10th Cir. 1994) ...........................................................17

*Fierro v. Norton*,
  152 Fed. App'x 725 (10th Cir. 2005) .................................................38

*First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*,
  786 P.2d 1326 (Utah 1990) .................................................................24

*Frank v. U.S. West, Inc.*,
  3 F.3d 1357 (10th Cir. 1993) .............................................................47

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*,
  9 F.3d 823 (10th Cir. 1993) ...............................................................31

*Grossman v. Novell, Inc.*,
  120 F.3d 1112 (10th Cir. 1997) .........................................................17

*Grynberg Prod. Corp. v. Susman Godfrey, L.L.P.*,
  No. 10-1248, 2012 U.S. App. LEXIS 3316 (10th Cir. Feb. 16,
  2012) ...................................................................................................49

*Gull Labs., Inc. v. Diagnostic Tech., Inc.*,
  695 F. Supp. 1151 (D. Utah 1988)......................................................................43

*Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*,
  82 F.3d 1533 (10th Cir. 1996) ....................................................................30, 31

*Incorp. Village of Saltaire v. Zagata*,
  720 N.Y.S.2d 200 (App. Div. 2001)..............................................................27

*Kerry v. Southwire Co. & Affiliates Employee Benefits Plan*,
  324 F. Supp. 2d 1225 (D. Utah 2004)............................................................27

*Kilcrease v. Domenico Transp. Co.*,
  828 F.3d 1214 (10th Cir. 2016) ......................................................................38

*L&M Enters., Inc. v. BEI Sensors & Sys. Co.*,
  231 F.3d 1284 (10th Cir. 2000) ......................................................................39

*Las Vegas Ice and Cold Storage Co. v. Far West Bank*,
  893 F.2d 1182 (10th Cir. 1990) ......................................................................47

*Leigh Furniture*, 657 P.2d at 308....................................................................42

*Lexmark Int'l. Inc. v. Static Control Components, Inc.*,
  387 F.3d 522 (6th Cir. 2004) ..........................................................................31

*Martinez v. CO2 Servs.*,
  12 Fed. App'x 689 (10th Cir. 2001) ................................................................41

*Medinol Ltd. v. Boston Scientific Corp.*,
  346 F. Supp. 2d 575 (S.D.N.Y. 2004) .......................................................19, 20

*Monsanto Co. v. McFarling*,
  302 F.3d 1291 (Fed. Cir. 2002) ......................................................................28

*Muller-Paisner v. TIAA*,
  289 F. App'x 461 (2nd Cir. 2008) ..................................................................24

*Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*,
  No. 88-CV-819, 1992 WL 121726 (N.D.N.Y May 23, 1992) .........................25

*Omron Healthcare, Inc. v. Maclaren Exports Ltd.*,
  28 F.3d 600 (7th Cir. 1994) ............................................................................53

*Oriskany Cent. Sch. Dist. v. Edmund J. Booth Architects*,
   615 N.Y.S.2d 160 (App. Div. 1994)...................................................................29

*Penato v. George*,
   383 N.Y.S.2d 900 (N.Y. App. Div. 1976)........................................................25

*R.W. Beck, Inc. v. E3 Consulting, LLC*,
   577 F.3d 1133 (10th Cir. 2009) ........................................................................32

*Richison v. Ernest Grp.*,
   634 F.3d 1123 (10th Cir. 2011) ........................................................................35

*Roche Diagnostics GMBH v. Enzo Biochem, Inc.*,
   992 F. Supp. 2d 213 (S.D.N.Y. 2013) ..............................................................23

*Rockwell Int'l Corp. v. Goss Graphic Sys., Inc.*,
   No. 00-8763, 2001 WL 293818 (S.D.N.Y. Mar. 27, 2001) ..............................28

*SCO Group, Inc. v. Novell, Inc.*,
   439 F. App'x 688 (10th Cir. 2011)..................................................................6, 7

*SCO Group, Inc. v. Novell, Inc.*,
   578 F.3d 1201 (10th Cir. 2009) ..........................................................................6

*Sil-Flo, Inc. v. SFHC, Inc.*,
   917 F.2d 1507 (10th Cir. 1990) ........................................................................52

*Tadlock v. LaHood*,
   550 Fed. App'x 541 (10th Cir. 2013) ...............................................................38

*TeeVee Toons, Inc. v. Gerhard Schubert GmbH*,
   No. 00-5189, 2006 WL 2463537 (S.D.N.Y. Aug. 23, 2006) ............................26

*Truck Ins. Exch. v. MagneTek, Inc.*,
   360 F.3d 1206 (10th Cir. 2004) ........................................................................41

*Turtur v. Rothschild Registry Int'l, Inc.*,
   26 F.3d 304 (2d Cir. 1994) ...............................................................................28

*TVT Records v. Island Def Jam Music Grp.*,
   412 F.3d 82 (2d Cir. 2005) ...............................................................................19

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
    155 F. Supp. 2d 1 (S.D.N.Y. 2001) ...................................................................32

**Statutes & Rules**

17 U.S.C. § 102 ................................................................................................30

17 U.S.C. § 103 ................................................................................................30

17 U.S.C. § 106 ..........................................................................................30, 31

N.Y. C.P.L.R. 201 (McKinney 2006) ..............................................................27

Copyright Act Section 301 ...............................................................................30

Fed. R. Civ. P. 15(a) ............................................................................1, 44, 46

Fed. R. Civ. P. 16(b) ..................................................................................44, 45

Fed. R. Civ. P. 30(b)(6) .............................................................................37, 39

Fed. R. Civ. P. 37(c)(1) ....................................................................................38

## PRIOR AND RELATED APPEALS

There are no related or prior related appeals in this case.  However, there were two appeals to this Court in a separate but factually related case, *The SCO Group, Inc. v. Novell, Inc.*, No. 2:04-CV-00139-TS:

- No. 08-4217, in which SCO, as Appellant, submitted an appeal on March 4, 2009, from the district court's order granting summary judgment in favor of Novell, Inc.  On August 24, 2009, this Court affirmed the district court's order in part, reversed the order in part, and remanded.  578 F.3d 1201 (10th Cir. 2009).

- No. 10-4122, in which SCO, as Appellant, submitted an appeal on September 9, 2010, from a jury verdict following a three-week trial, from the district court's subsequent findings of fact and conclusions of law, and from the district court's order denying SCO's renewed motion for judgment as a matter of law or, in the alternative, for a new trial.  On August 30, 2011, this Court affirmed.  439 F. App'x 688 (10th Cir. 2011).

# GLOSSARY

| AT&T | AT&T Bell Laboratories |
|---|---|
| UNIX | A computer operating system originally developed by AT&T |
| Linux | An "open-source" computer operating system developed by thousands of developers worldwide |
| AIX | IBM's computer operating system that is a flavor of UNIX |
| Caldera | Caldera International, Inc. |
| Novell | Novell, Inc. |
| Santa Cruz | The Santa Cruz Operation, Inc. (sometimes colloquially known as "SCO"; the "SCO" referred to herein is not Santa Cruz) |
| IBM | International Business Machines Corporation |
| SCO | The SCO Group, Inc. (formerly known as Caldera Systems, Inc.) |
| Project Monterey | The joint development project between IBM and Santa Cruz |
| JDA | The joint development agreement signed between IBM and Santa Cruz |
| BayStar | BayStar Capital Management, LLC |
| HP | Hewlett-Packard Company |
| Oracle | Oracle Corporation |
| Computer Associates | Computer Associates International, Inc. |
| Intel | Intel Corporation |
| OpenSource Conference | The 2004 conference hosted by John Terpstra in Scottsdale, Arizona |
| TI Mot. | IBM's Motion for Summary Judgment on the Tortious Interference Claims |

| TI Opp. | SCO's Opposition to Summary Judgment on the Tortious Interference Claims |
|---|---|
| TI Reply | IBM's Reply in Further Support of the Motion for Summary Judgment on the Tortious Interference Claims |
| UC Mot. | IBM's Motion for Summary Judgment on the Unfair Competition Claim |
| UC Opp. | SCO's Opposition to Summary Judgment on the Unfair Competition Claim |
| UC Reply | IBM's Reply in Further Support of the Motion for Summary Judgment on the Unfair Competition Claim |

# STATEMENT OF THE ISSUES

At issue on this appeal is whether the district court properly brought SCO's litigation to a close after more than a decade—specifically:

(1)    Whether the district court correctly granted summary judgment on SCO's unfair competition claim, where (i) SCO adduced no evidence of unfair competition and SCO's claim was barred by the independent tort doctrine, (ii) the claim was untimely and (iii) the claim was preempted by federal copyright law;

(2)    Whether the district court correctly granted summary judgment on SCO's  interference claims, where (i) SCO failed to adduce any evidence of actionable interference, (ii) SCO failed to show IBM caused SCO's alleged injury and (iii) IBM did not act by improper means and IBM's alleged conduct was privileged; and

(3)    Whether the district court correctly denied SCO's motion for leave to file a fourth complaint adding a copyright claim, where (i) SCO failed to show good cause for its delay in seeking leave to amend and (ii) SCO failed to meet the requirements of Rule 15(a).

## STATEMENT OF THE CASE

This case concerns the misguided effort of a failing start-up to accomplish through litigation (and the threat of litigation) that which it could not achieve in a competitive market.

In March 2003, Caldera Systems, Inc. (which later renamed itself The SCO Group, Inc.) commenced a far-flung campaign to create the false and misleading impression that it had rights to the UNIX and Linux operating systems that it did not have. As part of the campaign, Caldera commenced this lawsuit, filed a similar lawsuit against Novell, and threatened litigation against most (if not all) Fortune 500 companies if they did not take a license from SCO.

After more than thirteen years of litigation, SCO agreed to the dismissal of most of its claims and the district court rejected the remainder of SCO's claims, including the claims at issue on this appeal: a claim for unfair competition concerning "Project Monterey"; two claims for tortious interference; and a copyright infringement claim related to Project Monterey. SCO's appeal of the district court's rulings should be rejected because the district court properly granted summary judgment against SCO on its unfair competition and tortious interference claims. The district court also properly exercised its discretion in denying SCO's motion to file a fourth complaint that would have asserted a claim for copyright infringement.

## A.    IBM, Its Products and Projects

IBM is a computer technology and consulting company.  Over the years, IBM has developed, marketed and sold a variety of computer hardware and software products.  Among the products relevant to this case are two operating systems, generally known as UNIX and Linux.  UNIX is a computer operating system program developed by AT&T in the 1970s.  (A105 ¶1.)  Linux is a computer operating system developed under an "open source" model by thousands of developers worldwide.  (A121 ¶75.)

Beginning in 1985, IBM entered into a series of licensing agreements with AT&T and its successors in interest, including Novell and Santa Cruz.[1]  (A2581-82; SCO Br. at 9.)  Pursuant to those agreements, IBM created its own flavor of UNIX, which it called AIX.  (A2582; A2592.)

To ensure choice for its customers, IBM also supported the development of Linux.  (A3526-27.)  IBM contributed some of its own proprietary source code to Linux and made investments in various companies to contribute to that development.  (A2656-57; A9639; TI Opp. at 88-89.)

As is commonplace, IBM periodically collaborated with other companies in an effort to deliver quality products to its customers.  One such

---

[1] Throughout its brief, Plaintiff misleadingly uses "SCO" to refer to both Santa Cruz and The SCO Group, Inc.  As explained below, the two companies are not the same, and their respective dealings with IBM differ in ways that are material to Plaintiff's claims.

3

collaboration was a joint development agreement with Santa Cruz known as Project Monterey.  (SCO Br. at 9; A1489-90.)

### B.    SCO and Its Turn toward Litigation

The SCO Group, Inc. (herein referred to as "SCO") was founded in 1994 as a Utah-based Linux company called Caldera, Inc.  SCO had nothing to do with the development of UNIX and played no role in Project Monterey.  (A9582; A9593; A9595; A2598 ¶¶ 55-56, A2602 ¶ 62.)

Unable to succeed as a Linux company, Caldera acquired UNIX assets from Santa Cruz and undertook to reinvent itself.  (A2602 ¶ 62.)  Caldera purported to have acquired AT&T's, Novell's and Santa Cruz's rights to UNIX, including the right to control what IBM and others did with their own flavors of UNIX and to shut down the development of the Linux operating system.  (A117 ¶59; A9641 ¶ 64, A9644 ¶67(g).)

This formerly Linux-focused company changed management, adopted a new name (The SCO Group, Inc.) (A9578), making it sound like the shorthand name by which Santa Cruz was known, and opted to pursue litigation in lieu of innovation and product development.

In 2003, SCO filed lawsuits against IBM, Novell, GM and AutoZone, and threatened to file suit against any company that did not promptly purchase a license from it.  (*See* A211-12.)  At the same time, SCO undertook a campaign to

create fear, uncertainty and doubt regarding the legitimacy of operating systems that ran a significant part of the world economy. (*See* A207-08.)

Not surprisingly, SCO's campaign resulted in a very large (but temporary) increase in its stock price and caused some companies to purchase licenses from it to avoid the risk of liability. (A9642 ¶66.)

## C. <u>Most of SCO's Claims Are Finally Resolved Against It</u>

SCO's litigation initiative focused primarily on IBM and Novell. SCO asserted numerous claims against them in separate but related lawsuits in the district court. (A1180; A9615.) SCO also sought belatedly to assert a copyright claim against IBM relating to Project Monterey, but the district court denied SCO's motion for leave to amend. (A1124-25.)

IBM and Novell both asserted counterclaims against SCO and, after extensive and expensive discovery, filed motions for summary judgment against SCO on SCO's claims (and on certain of their respective counterclaims). (A65.)

Before ruling on IBM's summary judgment motions, the district court entered summary judgment for Novell on SCO's claims against Novell in the *Novell* case. (A9486.) While the decision did not address SCO's claims against IBM, the decision effectively barred most of SCO's claims against IBM as well. (*Id.*)

Shortly after the district court's decision in the *Novell* case, and on the eve of trial, SCO filed for protection in Delaware under Chapter 11 of the

5

Bankruptcy Code.  (A9475.)  The filing resulted in an automatic stay in this case, which was administratively closed.  (A9484.)

Meanwhile, however, SCO appealed the district court's summary judgment ruling in the *Novell* case to this Court, and this Court remanded the case to the district court for trial.  *SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201 (10th Cir. 2009).

Following both a jury and bench trial, a final judgment was entered against SCO and in favor of Novell, and this Court affirmed.  *SCO Group, Inc. v. Novell, Inc.*, 439 F. App'x 688 (10th Cir. 2011).

### D.    <u>The Rest of SCO's Claims Are Rejected</u>

After this Court's affirmance in the *Novell* litigation, the district court reopened this case and undertook to rule on the outstanding motions.

Based on the *Novell* decision alone (and with SCO's consent), the district court entered summary judgment against SCO on its claims for breach of contract (Counts 1-4), its claim for copyright infringement (Count 5) and one of its claims for tortious interference (Count 8).  (A9486.)  The district court also entered summary judgment against SCO on two of IBM's counterclaims (Counts 9 and 10), which sought a declaration of non-infringement regarding pre-1996 UNIX source code.  (A9488.)  None of these claims is at issue on this appeal.

After supplemental briefing (to update briefs filed nearly a decade earlier), the district court entered summary judgment against SCO on its only

remaining claims:  a claim for unfair competition concerning Project Monterey

(Count 6) (A9614); and two claims for tortious inference (Counts 7 and 9)

(A9679).

       In an order dated February 5, 2016, the district court rejected SCO's

unfair competition claim because SCO failed to show that IBM engaged in unfair

competition.  (A9598-99.)  The court concluded that SCO's claim was barred by

the independent tort doctrine.  (*Id.*)

       The district court rejected SCO's tortious inference claims in an order

dated February 8, 2016.  The district court ruled that SCO's claims failed because

no evidence supports SCO's allegation of interference and because there is no

causal link between IBM's alleged acts and SCO's alleged injury.  (A9671.)

    **E.**    <u>**This Appeal**</u>

       Although the district court has not yet ruled on summary judgment

motions concerning IBM's counterclaims (one by IBM and two by SCO), the

district court suggested (and the parties agreed) that entry of a partial judgment

under Rule 54(b) might be the most efficient means to resolve the case.  (A101.)

SCO has represented that its only remaining assets are its claims against IBM, such

that it could not satisfy a judgment in favor of IBM on IBM's counterclaims.  (Dkt.

No. 1162 at 2.)

       In a partial judgment entered on March 1, 2016, the district court

ordered that, pursuant to the orders entered on July 10, 2013, February 5, 2016, and

February 8, 2016, judgment be entered in favor of IBM and SCO's causes of action be dismissed with prejudice.  (A9686.)

By the present appeal, SCO challenges the district court's orders of February 5 and 8, 2016, entering summary judgment against SCO on its unfair competition claim and tortious inference claims.  SCO also challenges the July 1, 2005 order of the court denying SCO leave to file a fourth complaint to assert a new claim against IBM for copyright infringement.

## STATEMENT OF FACTS

SCO's allegations and the evidence pertinent to those allegations are described in detail in the district court's decisions and the papers submitted in connection with the relevant motions, and we set out here only those facts useful to understanding why the district court properly rejected SCO's claims.[2]

### A.    SCO's Unfair Competition Claim

While SCO initially sought to pursue a very broad claim against IBM for unfair competition, it ultimately conceded that its only potential claim related to Project Monterey.  According to SCO, IBM "misappropriated into its 'AIX for Power' operating system UnixWare source code that SCO provided to IBM subject to strict restrictions that IBM ignored" and "engaged in a ruse to gain access to SCO's source code to effect the misappropriation".  (Dkt. No. 1134 at 3.)

Project Monterey was a joint development project between IBM and Santa Cruz.  The purpose of the project was to develop and market a "family" of UNIX-like operating system products, including a "Monterey/64" version for the forthcoming IA-64 Intel processor, a version to run on IBM's proprietary "Power" processor architecture and a version to run on the IA-32 architecture.  (A1489-90; A1492; A3080.)  The IA-64 architecture had not been commercialized when

---

[2] As is required, the evidence cited herein is presented in the light most favorable to SCO, despite IBM's disagreement with SCO's version of events.  In some instances, the district court viewed the allegations in the light most favorable to SCO absent evidentiary support, but that error is of no consequence in light of the district court's rulings.

Project Monterey began but was under development in a separate collaboration between Intel and HP.  (A2380; Ex. 186 ¶54; A1511.)

Project Monterey was governed by a joint development agreement dated October 26, 1998 (the "JDA").  Under the JDA, both Santa Cruz and IBM agreed to provide resources and technology to create a compatible family of products.  (A3080.)  Each party also granted the other a license to use code supplied during Project Monterey.  (A3084 § 2.0(c)(2), A3085 §2.0(d)(2).)

Although IBM and Santa Cruz engaged in development activities, Project Monterey encountered substantial challenges.  Among other things, Intel's IA-64 processor was delayed and did not end up shipping until mid-2001.  (A1466; A2599 ¶57.)  Once the Intel processor (Itanium) did arrive, it performed poorly and Intel and HP re-positioned Itanium as primarily an evaluation and development platform.  (A9588.)  As a result, there was a substantial decrease in market interest and confidence in IA-64 and thus the Monterey/64 product under development in Project Monterey.  (*Id.*; A1506; A1514; A2600 ¶58.)

At or about the same time, in May 2001, Santa Cruz finalized the sale of its Server Software and Professional Services divisions and its UNIX-related assets to Caldera International ("Caldera"), ending Santa Cruz's investment in and support of Project Monterey.  (A3076-77.)

Santa Cruz did not obtain IBM's prior written consent to an assignment of the JDA as required.  Instead, Santa Cruz informed IBM of the sale

10

in a letter dated June 6, 2001.  (*Id.*)  Caldera did not acquire Santa Cruz, which

continued in business, changing its name to "Tarantella".  (*Id.*)

IBM declined to consent to the assignment of Santa Cruz's rights and

obligations under the JDA.  Instead, IBM promptly exercised its right to terminate

the JDA in a letter dated June 19, 2001.  (A3009.)  Contrary to SCO's contention,

IBM told Santa Cruz (and Santa Cruz understood before the Caldera transaction

closed) that IBM would not consent to the assignment.  (A3009; A3076-77; *see*

*also* UC Reply at 17-18.)

### B.  SCO's Tortious Interference Claims

SCO asserts two claims for tortious interference, its Seventh and

Ninth Causes of Action.  The claims concern entities or relationships with which

IBM is alleged to have interfered both directly and indirectly.

SCO identified six entities with which IBM is alleged to have

interfered directly:  BayStar, HP, Computer Associates, Oracle, Intel and the

"OpenSource Conference".  (A9632.)  According to SCO, IBM communicated to

the entities that IBM was ending its business ties with SCO and asked them to do

the same.  (A9632-34.)

SCO failed, however, to adduce any evidence of improper conduct by

IBM with respect to these six entities.  In fact, the undisputed evidence

demonstrates that IBM did not interfere with any of these alleged relationships.

No one from IBM even communicated with any representative of BayStar

11

concerning SCO or BayStar's investment in SCO (A2522 ¶4), and no one from IBM ever told Computer Associates, Oracle or Intel that IBM was cutting off its business ties with SCO.  (A2566-67 ¶¶2-4; A3074 ¶¶2-4; A2854 ¶¶2-4.) Representatives from all six entities provided sworn testimony that none of their respective relationships with SCO were altered because of any alleged actions or statements by IBM.  (A9649; A9655-56; A9659; A9662.)

Nor did SCO offer any evidence to support its claim of indirect interference by IBM.  SCO alleged that IBM interfered with possible business relationships with 14 "former SCO customers" who migrated to a Linux platform and 156 "other Linux users".  (A9634-96.)  It did not allege "that IBM contacted any one of these companies individually"; instead, it accused IBM of affecting the market generally.  (A4533 at 26:17-22, 29:12-30:10.)  Notably, SCO generated the list of the 156 companies by lifting names from an IBM document which purports to identify certain companies as "Linux wins", and offered no basis for its claims apart from "information and belief".  (A4537 at 42:6-11; A1769-71.)

IBM's Linux strategy was undertaken in good faith and entirely for competitive reasons.  IBM harbored no malice or ill will towards SCO and did not have any intent to harm SCO.  (A4803 ¶5.)  SCO's own experts acknowledged that competitive forces led IBM to support Linux.  (A2746; A2749-52; A3517; A3524.) They recognized that (i) IBM made the decision to support Linux because of competition from Sun and Microsoft, among other factors; (ii) the decision had

nothing to do with SCO; and (iii) IBM's support of Linux constituted competition on the merits. (A2757; A3526-27; A3546-47.)

In any case, SCO failed specifically to identify any damages resulting from any acts of alleged interference by IBM. (*See* TI Opp. at 89-90 (failing to offer evidence disputing IBM's contention that SCO had not specifically identified evidence of any damages).) In truth, there were problems adversely affecting SCO's business from at least 1999 onward that were independent of any alleged actions of IBM. (A9656-57; A9667-68; A9677.)

### C.    SCO's Proposed Copyright Claim

SCO sought to file a fourth complaint to add a Tenth Cause of Action for copyright infringement. But it did not do so until more than 19 months after commencement of the litigation and eight months after the district court's deadline for seeking leave to further amend. (A33; A322; A1390-1400 ¶¶217-41.)

SCO's proposed claim asserted that "IBM misappropriated, and used in its own 'AIX for Power' operating system, substantial copyrighted source code relating to UnixWare System V Release 4 ('SVr4')". (A1390 ¶217.) SCO further alleged that "IBM obtained access to the copyrighted Unix Ware SVr4 code through 'Project Monterey'". (*Id.*)

But the JDA entered into by Santa Cruz and IBM in October 1998 specifically envisioned IBM's use of the UnixWare/SVr4 code in IBM's AIX products. The JDA gave IBM a royalty-free license to include such

13

UnixWare/SVr4 code in its products, including AIX for Power, the allegedly

infringing product here.  (A426 §§ 2.0(d)(2); A479.)

Importantly, the JDA contains a forum-selection clause for New York

courts and sets a two-year time limit for any claim.  (A454-55 § 22.3.)

Section 22.3 of the JDA provides in relevant part:  "Any legal or other action

related to a breach of this Agreement must be commenced no later than two (2)

years from the date of the breach in a court sited in the State of New York".  (*Id.*)[3]

Although SCO claims (incorrectly) that Santa Cruz did not grant IBM

a license to the code in question, the documentary record makes clear that (i) Santa

Cruz intended to give IBM a license to the code (A483; A497; A526; A583) and

(ii) the disputed code was, with the knowledge of Santa Cruz, included in the AIX

for Power product (A592; A701; A725-726; A729).  Publicly-available documents

(*e.g.*, product announcements, industry reports and manuals) issued long before

SCO's proposed complaint reflect the inclusion of UnixWare/SVr4 code in AIX

for Power—specifically, AIX 5L, the release of AIX for Power (and for the Intel

IA-64 processor) that contained technology from UnixWare/SVr4.  (A737-38;

A742; A744; A759; A776; A780; A822-23; A863-76.)

---

[3] Section 22.11 of the JDA states "[n]o . . . waiver of any provision of this Agreement shall be effective unless it is set forth in a writing which refers to the provisions so affected and is signed by an authorized representative of each Party." (A456 § 22.11.)  IBM has never executed such a writing setting forth its intention to waive Section 22.3 of the JDA.

At least as of August 2004, SCO was in possession of the IBM internal documents SCO used to support its motion to amend, and it was disclosing the substance of those documents to the media.  (A878; A881-82.)  Yet, SCO did not seek to assert the proposed copyright claim until October 2004, after the two-year limitations period had expired.  (A318.)

In a decision dated July 1, 2005, the district court denied SCO's motion to add a claim based upon IBM's alleged copying of code obtained through Project Monterey into AIX.  (A1836-37.)  The district court held that SCO had unduly delayed seeking leave to add the proposed claim because it appeared that "SCO—or its predecessor—either knew or should have known about the conduct at issue before it filed its original Complaint".  (A1837.)  The district court also found that SCO's proposed amendment would have "expanded this already sizable and complex litigation and would [have] serve[d] only to delay its resolution".  (*Id.*)

## SUMMARY OF ARGUMENT

The district court properly entered summary judgment against SCO on its unfair competition and tortious interference claims and soundly exercised its discretion in denying SCO leave to untimely file a fourth complaint that would have asserted a new claim of copyright infringement.

1. Unfair Competition.  While SCO pursued a very broad claim for unfair competition for many years, it eventually narrowed the claim to Project

Monterey.  That claim fails because, as the district court found, SCO failed to adduce evidence of unfair competition.  The district court saw through SCO's attempt to dress up a claim for breach of the JDA as a tort and properly rejected the claim under the independent tort doctrine.  (A9599-9605.)  Contrary to SCO's contention, it could not show that IBM owed or breached any duty independent of the JDA, such as a separate fiduciary duty.  (A9605-9614.)  SCO's unfair competition claim also fails for two reasons not reached by the district court: (1) the claim was untimely because it was brought after the two-year limitations period established in the contract; and (2) the claim was preempted by federal copyright law.  Indeed, SCO had previously tried without success to raise the same allegations in the form of a copyright claim.

        2.  <u>Tortious Interference</u>.  SCO initially asserted three claims for tortious interference but only two remain at issue:  (1) SCO's claim that IBM intentionally interfered with SCO's contracts; and (2) SCO's claim that IBM intentionally interfered with SCO's potential or existing business relationships. These claims fail because SCO failed to adduce any evidence of actionable interference by IBM or to show IBM caused SCO's alleged injury.  Like SCO's unfair competition claim, these claims also fail for reasons not reached by the district court:  (1) IBM did not act by improper means, and (2) IBM's alleged conduct was privileged as it advanced the company's legitimate competitive interests.

3. <u>Copyright Infringement</u>.  In addition to the copyright claim SCO asserted in its second amended complaint (which is not at issue on this appeal), SCO sought leave at the end of fact discovery to assert a new claim for copyright infringement concerning code allegedly misappropriated by IBM through Project Monterey.  The district court properly denied SCO's motion for leave to amend because the amendment was untimely, and SCO failed to demonstrate good cause for its delay.  In an obvious effort to circumvent the district court's ruling, SCO incorporated its copyright allegations into its unfair competition claim, which is why (as stated) that claim is preempted.

## STANDARD OF REVIEW

This Court "review[s] a district court's order granting a motion for summary judgment *de novo*, applying the same legal standard utilized by the district court." *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994).  This Court "review[s] the district court's decision to deny leave to amend a complaint for abuse of discretion."  *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997) (citation omitted).

# ARGUMENT

## I.   THE DISTRICT COURT PROPERLY REJECTED SCO'S UNFAIR COMPETITION CLAIM

As stated, SCO's only unfair competition claim relates exclusively to Project Monterey, which is governed by an extensive contract (the JDA) between IBM and Santa Cruz.  Because SCO was not a party to the JDA (and thus could not assert a claim against IBM for breach of the agreement), it sought to dress up a claim for breach of the JDA as a claim for unfair competition.  However, that claim fails as a matter of law, and the district court's rejection of SCO's unfair competition claim should be affirmed.[4]

### A.   SCO Adduced No Evidence of Unfair Competition by IBM

SCO's allegations of unfair competition fail because, as the district court held, they are barred under the independent tort doctrine (A9599-9602), and SCO's attempt to avoid the doctrine by claiming a breach of fiduciary relationship was baseless.  In addition, SCO lacked standing to pursue an unfair competition claim that was indisputably grounded on the JDA, a contract to which SCO was not a party.

---

[4] SCO cites both New York and Utah law in support of its unfair competition claim.  We believe Utah law applies to SCO's interference claims and New York law applies to its unfair competition claim.  But SCO's claims fail under the laws of both jurisdictions.

### 1.    SCO's Unfair Competition Claim Is Barred by the Independent Tort Doctrine

It is well-settled that a plaintiff cannot dress up a contract claim as a claim for unfair competition. "A simple breach of contract is not to be considered a tort unless a duty independent of the contract itself has been violated". *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 91-92 (2d Cir. 2005) (quoting *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 389 (N.Y. 1987)). This legal duty "must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark-Fitzpatrick*, 70 N.Y.2d at 389; *accord Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 607 (S.D.N.Y. 2004).[5]

As the district court correctly found, SCO's unfair competition claim is not based on an alleged violation of a duty independent of the JDA. Nor does it spring from circumstances extraneous to, and not constituting elements of, the contract. SCO alleges that IBM engaged in "[m]isappropriation of source code, methods, and confidential information" and "[c]ontribution of protected source code and methods for incorporation into one or more Linux software releases,

---

[5] The law is the same in Utah: where there exists an "express contract provision dealing with the issue, there is no independent duty created here which would create a tort apart from the contractual obligations between the parties." *Deer Crest Associates I, L.C. v. Deer Crest Resort Group, L.L.C.*, No. 2:04-CV-00220-TS, 2006 WL 722216, *3 (D. Utah Mar. 15, 2006).

intended for transfer of ownership to the general public." (A156 ¶184(a) and (e).)

IBM's use and appropriation of that code and other information is expressly

allowed by the JDA. (*See* A9584-85 (quoting JDA § 2.0(d)(2) (expressly granting

IBM "a worldwide, non-exclusive, royalty free . . . perpetual and irrevocable . . .

right and license under SCO's and applicable third parties' copyrights . . . and any

trade secrets or confidential information in the Licensed SCO Materials and SCO

Project Work which are included in Deliverables . . .").) Use of the code was not

"collateral and extraneous to the terms and conditions of the contract that were

allegedly breached." *Medinol Ltd.*, 346 F. Supp. 2d at 607. Rather, there exists an

"express contract provision dealing with the issue, [and therefore,] there is no

independent duty created here which would create a tort apart from the contractual

obligations between the parties." *Deer Crest Associates I, L.C.*, 2006 WL 722216,

at *3.

       Although a tort claim "must be sufficiently distinct from the breach of

contract claim in order to be legally sufficient", *Medinol Ltd.*, 346 F. Supp. 2d at

607, SCO based its claim on the allegations that IBM engaged in "[b]reach of

contract", "[v]iolation of confidentiality provisions running to the benefit of

plaintiff", and "[i]nducing and encouraging others to violate confidentiality

provisions". (A156 ¶184(b)-(d).) In fact, SCO's briefing is replete with

characterizations of the Monterey/64 product being a "sham," but the quality of the

Monterey/64 product is only relevant to the use of SCO's code in the context of the

JDA, and SCO essentially sought to drive home the point that IBM did not

sufficiently perform its contractual obligations to reap the benefits of the contract.

Thus, as the district court stated, "Although SCO argues that its unfair competition

claim is not subsumed in Santa Cruz's and IBM's contractual duties, not only does

the JDA clearly address[] IBM's use of the code, but SCO's own Second Amended

Complaint specifically alleges breach of contract as many of the bases for its unfair

competition claim."  (A9605.)

SCO contends the district court misapplied the independent tort

doctrine by (1) construing it to bar a claim simply because there is an express

contract; (2) disregarding the rule that the same conduct that breaches a contract

can also breach other duties independent of a contract; and (3) requiring a plaintiff

to show that the tortfeasor owed a "heightened duty".  That is wrong.  The district

court's decision makes clear that it did not reject SCO's claim simply because it

relates to a contract; it did not disregard the principle that conduct that breaches a

contract can also breach other duties; and it did not require SCO to show that IBM

owed a heightened duty.  (A9599-9601; A9604.)

Moreover, the district court expressly ruled that SCO's claim was

barred, not for the reasons imagined by SCO, but because "the alleged

misappropriation is inseparable from an alleged breach of the JDA and its licensing

provisions because IBM's legal right to use the source code is at the heart of each

claim", and "there is no independent duty created here which would create a tort apart from the contractual obligations between the parties".  (A9604.)

SCO also argues that even if the district court were right to consider whether SCO's claim was subsumed within the contract, it erred in concluding that SCO's unfair competition allegations were in fact subsumed by the JDA.  (SCO Br. at 35.)  According to SCO, "SCO is *not* seeking to hold IBM to a promise"; "IBM never expressly promised not to deceive or misappropriate code"; and "[n]othing in the JDA expressly requires IBM to inform SCO of its intent to string Project Monterey along or use the deception to claim a right to SCO's code".  (*Id.*) What SCO overlooks, however, is that, as the district court found, "determining that IBM misappropriated the code in question would require a legal conclusion that IBM had breached the contract".  (A9604.)  IBM could not possibly have misappropriated the code in question unless it also breached the JDA because Santa Cruz gave IBM the code pursuant to the contract, and authorized IBM to use it.  IBM had no duty to Santa Cruz (or anyone else) concerning the code at issue except as set forth in the contract.

At bottom, SCO relies on an incorrect and outdated concept of unfair competition.  The law of unfair competition does not encompass any and all forms of alleged commercial unfairness, as SCO suggests.  Rather, as the Second Circuit has stated, in one of the very cases cited (misleadingly) by SCO, "whatever the breadth and flexibility of New York's unfair competition tort, it depends upon the

22

allegation of facts that, if true, would constitute misuse of plaintiffs' property."
*Big Vision Private Ltd.*, 610 F. App'x at 71(internal quotation marks and citations
omitted).  There are no such facts at issue here and the only alleged misuse relates
to code covered by the JDA.[6]

### 2.    SCO's Fiduciary Duty Argument Is Unsupported

As a fall back, SCO contends that the district court improperly
required that SCO show the existence of a fiduciary duty to make out its unfair
competition claim.  But the district court did no such thing.  It was SCO that
invoked fiduciary principles in an attempt to avoid the independent tort doctrine.
(UC Opp. at 42.)  The district court simply addressed, and properly rejected, SCO's
argument that IBM owed SCO fiduciary duties.[7]

---

[6] SCO cites to *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp.2d 609
(S.D.N.Y. 2003), for the proposition that the tort of unfair competition includes
any form of commercial unfairness.  (SCO Br. at 26.)  However, *Astroworks* was
decided before the New York Court of Appeals held in *ITC Ltd. v. Punchgini, Inc.*
that the tort of unfair competition is not all-encompassing.  850 N.Y.S.2d 366, 372
(2007).  As the Southern District of New York Court recently explained, the tort of
unfair competition is not "equivalent to the amorphous term 'commercial
fairness'".  *Roche Diagnostics GMBH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213,
223 n.7 (S.D.N.Y. 2013) (citations omitted) (rejecting plaintiff's attempt to
characterize unfair competition as "broad and flexible" and encompassing "any
form of commercial immorality").

[7] SCO misconstrues the district court's opinion when it argues that the district
court did not acknowledge that SCO's argument was based on fiduciary or
"common law" duties.  To the contrary, the district court explicitly addressed
SCO's allegations that "IBM has independent fiduciary and common law
confidentiality duties".  (A9609.)

Under New York law, a fiduciary relationship exists "when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Muller-Paisner v. TIAA*, 289 F. App'x 461, 465 (2nd Cir. 2008) (citations omitted).  In Utah, for a fiduciary duty to lie, "there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other." *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990) (citations omitted).

Here, SCO failed altogether to show that IBM was a fiduciary of SCO.  As stated, SCO was not a party to the JDA and had nothing to do with Project Monterey, the initiative as to which it claims IBM owed it fiduciary duties. That alone is fatal to SCO's fiduciary allegations.

But even if (contrary to fact), SCO and Santa Cruz were the same entity, IBM did not owe Santa Cruz any fiduciary duties.  At the time they entered into Project Monterey, IBM and Santa Cruz were sophisticated business entities acting at arm's length.[8]  "By their nature, arms-length commercial transactions ordinarily do not involve relationships defined by the New York court as fiduciary." *Muller-Paisner*, 289 F. App'x at 466.  While partnerships and joint

---

[8] SCO argues that courts must look beyond the language of the contract to the economic realities when determining whether there is a joint venture.  While that is true, the district court did just that.  (A9613.)

24

ventures can give rise to fiduciary duties, IBM and Santa Cruz unambiguously

stated in the JDA that they were not forming a joint venture or partnership:

> This Agreement shall not be construed to establish any
> form of partnership, agency, franchise or joint venture of
> any kind between [Santa Cruz] and IBM, nor to
> constitute either party as a[n] agent, employee, legal
> representative, or any other form of representative of the
> other. This Agreement shall not be construed to provide
> for any sharing of profits or losses between the parties.
> (A455 § 22.5.)[9]

The cases relied upon by SCO to support its argument that there is a

fact issue with respect to whether IBM and SCO were in a joint venture are easily

distinguished. *Penato v. George*, 383 N.Y.S.2d 900, 901-02 (N.Y. App. Div.

1976), involved a woman who gave money to a family friend in connection with a

business venture in which her son participated; it did not involve two sophisticated

business entities who entered an arm's-length contract. *Niagara Mohawk Power

Corp. v. Stone & Webster Eng'g Corp.*, No. 88-CV-819, 1992 WL 121726

(N.D.N.Y May 23, 1992), did not even examine whether there was a joint venture

---

[9] SCO points to JDA provisions regarding ownership of joint inventions and provisions regarding royalties to support its claim that Project Monterey was a joint venture or partnership. But such provisions are insufficient to refute the plain language of the JDA. The royalty provisions are akin to sales commissions, which the court in *Kidz Cloz* found insufficient for a reasonable jury to conclude that there was sharing of profits and losses. *Kids Cloz*, 320 F. Supp. 2d at 174-75. And nothing in the contract speaks to sharing losses, an essential element of a joint venture. Where there is no sharing in the losses of the venture, there is no joint venture. *Cosy Goose Hellas v. Cosy Goose USA, Ltd.*, 581 F. Supp. 2d 606, 623 (S.D.N.Y. 2008) (applying New York law).

and did not involve a contractual provision disclaiming the existence of the alleged special relationship.[10]

### 3.    SCO Lacks Standing To Pursue Its Claim

SCO's unfair competition claim also cannot survive for the additional reason that SCO was never a party to, and does not have standing to assert a claim related to a breach of, the JDA.  While it is plainly for this reason that SCO attempts to recast a contract claim as one for unfair competition rather than breach of contract, SCO cannot co-opt claims it never owned by the expedient of claiming that IBM's alleged breaches of contract amounted to unfair competition.

Section 22.12 of the JDA, which is entitled "Assignment", provides that "[n]either party may assign, or otherwise transfer, its rights or delegate any of its duties or obligations under this Agreement without the prior written consent of the other party".  (A456-57 § 22.12.)  IBM invoked Section 22.12 and its right to terminate the agreement under Section 15.2.  (A3009.)  Thus, SCO never was a party to the JDA; nor did it acquire any of Santa Cruz's rights under the JDA. (A421; A3076-77; A2104-05.)  As a result, SCO does not have standing to enforce any of those rights, no matter how it labels its claim.  *See TeeVee Toons, Inc. v.*

---

[10] That a few IBM e-mails referred to Santa Cruz colloquially as a "tight partner" is insufficient to alter the terms of the JDA or the partners' relationship. In *Banco Industrial de Venezuela, C.A. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508, 512-13 (S.D.N.Y. 2012), the court rejected the argument that the defendant's representation of itself as "[a] partner that will earn your trust" created a heightened duty of care.

*Gerhard Schubert GmbH*, No. 00-5189, 2006 WL 2463537, at *3 (S.D.N.Y. Aug.

23, 2006) (holding that because plaintiff was neither party to the relevant contract,

nor an intended third-party beneficiary, plaintiff lacked standing both to enforce

the contract and assert a tort claim related to a breach of that contract).[11]

### B.    SCO's Unfair Competition Claim Is Untimely

SCO's unfair competition claim also fails because it is time barred.

### 1.    The JDA's Two-Year Limitations Provision Applies to SCO's Unfair Competition Claim

As stated, SCO's unfair competition claim was limited to Project

Monterey.  The Project Monterey JDA expressly states that "[a]ny legal or other

action related to a breach of this Agreement must be commenced no later than two

(2) years from the date of the breach".[12]  (UC Mot. ¶25.)

SCO's unfair competition claim plainly is directly "related to" an

alleged breach of the JDA.  Not only are the alleged representations upon which

---

[11] SCO also cannot establish IBM acted in bad faith, which is necessary to support a claim for unfair competition based upon misappropriation.  *See Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 482 (2d Cir. 2004).  IBM indisputably had a license to access the Santa Cruz code and to use it in AIX for Power, and SCO has not adduced any evidence that IBM acted in bad faith.  (*See* UC Reply at 15-17.)

[12] The parties to a contract "may agree to limit the period of time within which an action must be commenced to a shorter period of time than that provided by the applicable Statute of Limitations".  *Incorp. Village of Saltaire v. Zagata*, 720 N.Y.S.2d 200, 200 (App. Div. 2001); *see also* N.Y. C.P.L.R. 201 (McKinney 2006); *Kerry v. Southwire Co. & Affiliates Employee Benefits Plan*, 324 F. Supp. 2d 1225, 1227 (D. Utah 2004).  Provisions limiting the period within which to file suit to periods far less than two years have been found reasonable.  *See, e.g.*, *Incorp. Village of Saltaire*, 720 N.Y.S.2d at 201.

SCO bases its claim "related" to the JDA, but they are explicitly contained in the JDA.[13]  SCO does not dispute that IBM was entitled to access the Santa Cruz code and licensed to use it for certain purposes; the thrust of SCO's (erroneous) allegation is that IBM breached its obligations under the JDA by using the code outside the authorized consent.  (UC Mot. ¶¶13, 20.)  Tellingly, SCO's own brief in the district court conceded that its unfair competition claim related to an alleged breach of the JDA.  (UC Opp. at 42.)

Courts routinely have construed language such as the "related to" language of Section 22.3 to include non-contractual claims comparable to SCO's unfair competition cause of action.  *See, e.g.*, *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309-10 (2d Cir. 1994); *Cambridge Nutrition A.G. v. Fotheringham*, 840 F. Supp. 299, 300-02 (S.D.N.Y. 1994).  Indeed, courts have interpreted language far narrower than that in Section 22.3 to encompass non-contractual claims.  *See, e.g.*, *Monsanto Co. v. McFarling*, 302 F.3d 1291, 1294-96 (Fed. Cir. 2002) (holding patent claims subject to forum selection clause applicable to "all disputes arising under" contract); *Rockwell Int'l Corp. v. Goss Graphic Sys., Inc.*, No. 00-8763, 2001 WL 293818, at *1-2 (S.D.N.Y. Mar. 27, 2001) (applying

---

[13] In its interrogatory responses, SCO asserts that IBM's alleged fiduciary duty arose from IBM's representations.  (A1650.)  Those representations are explicitly contained in the JDA, and SCO's allegation that IBM breached duties allegedly arising from those representations therefore "relates to a breach" of the JDA.  (UC Opp. at 36-38.)

forum selection clause using "arising out of this Agreement" language to copyright claim because resolution of claims "relate to the interpretation of the Agreement").

### 2. SCO's Claim Was Untimely Under the Two-Year Limitations Provision

Because SCO's claim is "related to" an alleged breach of the JDA, it had to be filed "no later than two (2) years from the date of the breach". (UC Mot. ¶25.) It was not timely filed. (UC Reply at 5-8.) SCO did not file its unfair competition claim until March 2003, more than two years after the alleged breach to which the claim relates.[14]

IBM's alleged breach of the JDA and misappropriation of code occurred, by SCO's own account, in December 1999. (A124-126; UC Mot. ¶11.) IBM's inclusion of the code in its AIX for Power product was known to Santa Cruz and the market generally by October 2000. (UC Mot. ¶¶ 13,14.) Consistent with that fact, SCO's own expert (Christine A. Botosan) purported to calculate damages for SCO's unfair competition claim beginning on October 1, 2000. (*Id.* ¶15.) Thus, even if (contrary to fact) IBM engaged in unfair competition by using code provided in Project Monterey, that alleged tort occurred no later than October 2000. Because SCO failed to file this action prior to October 2002, its unfair competition claim is time barred.

---

[14] Courts enforce contractual provisions that not only limit the time to bring suit, but also establish when a cause of action accrues. *See Oriskany Cent. Sch. Dist. v. Edmund J. Booth Architects*, 615 N.Y.S.2d 160, 161 (App. Div. 1994).

### C.    SCO's Claim Also Is Preempted by Federal Copyright Law

SCO's unfair competition claim also fails for another reason not reached by the district court: it is preempted by federal copyright law.  (UC Reply at 20-23.)  Section 301 of the Copyright Act "preempts a state common law or statutory claim if: '(1) the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.'"[15]  *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1542-43 (10th Cir. 1996).

Courts employ a two-prong test to determine whether a state law cause of action is preempted by the Copyright Act.  *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).  "The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.'"  *Id.* at 305 (citations omitted).  SCO's claim that IBM misappropriated SVr4 code provided during Project Monterey satisfies both prongs of this test.

*First*, "[t]he subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within

---

[15] Section 106 of the Copyright Act grants to the copyright owner the exclusive rights to: (1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work; (4) perform the work publicly; and (5) display the work publicly. 17 U.S.C. § 106.

the ambit of one of the categories of copyrightable works". *Id.* Here, SCO's charge is that IBM misappropriated SVr4 code from Santa Cruz's UnixWare 7 Product by reproducing it in IBM's AIX for Power product; that allegedly misappropriated code falls within the subject matter of federal copyright law, as SCO itself has argued. (UC Mot. ¶¶5-6.) Computer programming code may be protected under copyright law. *See, e.g.*, *Lexmark Int'l. Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 533 (6th Cir. 2004).[16]

       *Second*, under the general scope requirement, "federal law will preempt 'a state-created right if that right may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' established by federal law". *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993). In determining whether the state law claim at issue asserts rights equivalent to those specified in section 106 of the Copyright Act, the court will "*compare the elements* of the causes of action, *not the facts pled to prove them*". *Harolds Stores, Inc.*, 82 F.3d at 1543 (emphases added). Applying this test, courts have concluded

---

[16] Any argument by SCO that its unfair competition claim is not equivalent to a copyright claim would contradict its own prior positions. As discussed in Section III below, SCO requested leave to amend its complaint to assert a cause of action for copyright infringement based upon that very same conduct. SCO's proposed Tenth Cause of Action asserted that "IBM misappropriated, and used in its own 'AIX for Power' operating system, substantial copyrighted source code relating to UnixWare System V Release 4". (A383 ¶217.) SCO further alleged that "IBM obtained access to the copyrighted UnixWare SVr4 code through 'Project Monterey'". (*Id.*) SCO thus asserted that the SVr4 source code that now forms the basis for its Monterey unfair competition claim is copyrighted, and asserted a claim under federal law for IBM's alleged infringement of SCO's copyrights.

that copying-based unfair competition claims are preempted by federal copyright law.  *See, e.g.*, *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1147 (10th Cir. 2009); *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985); *Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 918-19 & n.15 (2d Cir. 1980); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 155 F. Supp. 2d 1, 24-25 (S.D.N.Y. 2001).

The procedural history of SCO's unfair competition claim concerning Project Monterey confirms that the claim is pre-empted.  SCO sought to assert a copyright claim to challenge IBM's use of SVr4 code in AIX for Power, but the district denied SCO leave to amend to assert the claim, for the reasons stated in Section III below.  Only then did SCO seek to back-door its copyright allegations into its unfair competition claim.  (A1390-1400; A1837; A1796.[17])  SCO cannot permissibly avoid the district court's ruling precluding its claim for copyright infringement by recharacterizing those same allegations as a claim for unfair competition.  *See Ehat*, 780 F.2d at 876 ("[Plaintiff] 'cannot achieve by an unfair competition claim what [he] failed to achieve under [his] copyright claim.' (quoting *Durham Indus., Inc.*, 630 F.2d at 918)).

---

[17] The full version of the document referenced at A1796 (SCO's Disclosure of Materials Allegedly Misused by IBM) was omitted from the Joint Appendix due to size.  The relevant portion is attached hereto as Exhibit A.

## II.    THE DISTRICT COURT PROPERLY ENTERED SUMMARY JUDGMENT REGARDING SCO'S INTERFERENCE CLAIMS

SCO's tortious interference claims likewise fail.  The district court properly rejected the claims for two independent reasons:  (1) SCO failed to adduce any evidence of actionable interference by IBM; and (2) SCO failed to show IBM caused SCO's alleged injury.  The claims also fail for reasons not reached by the district court:  IBM did not act by improper means, and IBM's alleged conduct is privileged.

### A.    SCO Failed To Adduce Admissible Evidence of Actionable Interference by IBM

SCO alleged two types of interference:  direct interference with existing business relationships; and indirect interference with an alleged UNIX-on-Intel market.  The district court properly rejected both theories.

### 1.    IBM Did Not Interfere with Any of the Identified Relationships

Despite its sweeping claims in the press, SCO ultimately identified just six entities whose relationships with SCO IBM was alleged to have interfered directly:  BayStar, Computer Associates, Oracle, Intel, HP and the Open Source Conference.  As the district court found, however, SCO failed to identify "any evidence of improper conduct by IBM that interfered with any of its contracts or business relationships".  (A9646.)

33

Although SCO contends that it "has ample evidence that IBM intentionally interfered with SCO's economic relationships" (SCO Br. at 39), it offered no such evidence to the district court, and it fails to refer this Court to any such evidence. Conclusory assertions aside, SCO points only to a supposed strategy by IBM to discontinue plans to work with SCO and to ask IBM partners to do the same. (*Id.* at 40-41.)

As is further discussed below (*see* Section II.C), however, that is not actionable interference. SCO cited no case in the district court, and cites no case in this Court, holding that it is. Nor are we aware of any such case. Tort law does not compel a company to do business with another; nor does it preclude a company from expressing the view that others should not deal with a particular company. That is especially so where, as here, the company with whom IBM allegedly asked others to disassociate (SCO) was embarking on a far-flung campaign to sue IBM and others, threatening legitimate IBM business interests, and, as this Court's rulings have since confirmed, making false claims to have rights to Linux and UNIX that it did not have. (*See* A207-212.)

Moreover, IBM submitted sworn testimony from both IBM representatives and from representatives of each of the entities with which IBM was alleged to have meddled, demonstrating the falsity of SCO's allegations. SCO faults the district court for relying on this evidence on the grounds that: (1) IBM's declarations were self-serving; (2) declarants speaking for the entities with which

34

IBM supposedly interfered might not have been aware of all IBM's alleged misconduct; and (3) the declarations "provide[d] no opportunity, with the trier of fact observing, to probe the certainty of the witnesses' memory and the scope of their personal knowledge". (SCO Br. at 43.) As an initial matter, SCO failed to make more than passing references to these arguments in the district court and has not argued that the district court's reliance constituted plain error. Moreover, declarations are a permissible means of presenting evidence in support of a summary judgment motion. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). And a witness is not precluded from testifying on behalf of an organization. *See, e.g.*, *Dona Ana Mut. Domestic Water Consumers Ass'n v. City of Las Cruces*, 516 F.3d 900, 912 (10th Cir. 2008). SCO's arguments are not only contrary to established summary judgment practice, but they are also at odds with its own approach in moving for summary judgment.[18]

      Furthermore, the burden was on SCO (not IBM) to adduce admissible evidence that IBM interfered with SCO's relations and it failed to do so, despite being given ample opportunity. Tellingly, SCO complains that the district court "improperly excluded testimony of SCO's Darl McBride that Lawrence Goldfarb of BayStar, who invested in SCO, 'expressly stated . . . that IBM had been "on

---

    [18] SCO submitted declarations from witnesses with a stake in the outcome (*i.e.*, its CEO) and from witnesses who purported to speak on behalf of the entities for which they worked. (*See* A9005, A9026, A9040.)

him, on him, on him" to retract his support for SCO.'"  (SCO Br. at 44.)  However, Mr. McBride's claim about what Mr. Goldfarb said is classic inadmissible hearsay, and it is contrary to Mr. Goldfarb's admissible and unrefuted testimony that IBM did not interfere with SCO's business relationship with BayStar, that no one from IBM ever had any communications with him and that "BayStar's decision to terminate its relationship with SCO had nothing whatsoever to do with any communications with or conduct of IBM."  (A2522; A9649.)

### 2.     SCO's Claim of Indirect Interference Is Baseless

Unable to show any direct interference by IBM, SCO alleges that IBM interfered indirectly with its prospective business relationships with "former SCO customers" and "other Linux users" (*i.e.*, the "UNIX-on-Intel marketplace" in general).  (A1765; A1769.)  As the district court correctly held, however, "indirect" interference or "interference with the market" is not a cognizable claim under Utah law.  (A9671-72.)

SCO asserts that "SCO's Claims of Indirect Interference with Potential Customers are Actionable".  (SCO Br. at 44.)  Tellingly, SCO devotes scant space to this argument and fails to offer a single case supporting its theory of indirect interference.  (*Id.*)  In fact, both Utah law (which controls these claims) and the laws of other states foreclose SCO's theory of indirect interference.  (*See* TI Mot. at 48-50 (citing cases).)

## B.    IBM Did Not Cause Any Injury to SCO

In addition to the fact that it cannot show cognizable interference, SCO's interference claims fail because, as the district court held, "there is no causal link between IBM's alleged acts and SCO's [alleged] injury" (A9676).

### 1.    SCO Failed To Identify Any Damages Resulting from IBM's Alleged Interference

In support of its motion for summary judgment, IBM showed that SCO could not identify any damages resulting from any acts of alleged interference by IBM.  (TI Mot. ¶ 66.)  Specifically, IBM demonstrated that SCO failed to disclose its alleged damages in response to IBM's interrogatories (TI Reply at 33-34); that SCO's Rule 30(b)(6) witness on damages was incapable of identifying "any damages that SCO may have suffered with respect to a particular company with which SCO alleges IBM interfered" (TI Opp. at 90); and that none of SCO's experts attempted to quantify or even address the alleged damages caused by IBM's alleged tortious interference with SCO's contractual or business relations (*id.*).

Although SCO bore the burden to adduce admissible evidence to the contrary, SCO did not point the district court to any admissible evidence at all. While purporting to dispute IBM's claim that SCO had suffered no damages, SCO conceded it could not dispute the specific testimony cited by IBM and stated simply that "SCO's damages for IBM's acts of interference are subsumed within

and coterminous with SCO's damages for its breach of contract claims, and those damages were addressed by SCO's experts".[19] (*Id.*)  For this reason alone, the district court properly entered summary judgment against SCO for failure to identify and articulate damages.  (A9676.)  Facts not properly disputed in response to a motion for summary judgment are deemed admitted.  *Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1225 (10th Cir. 2016); *Tadlock v. LaHood*, 550 Fed. App'x 541, 546-47 (10th Cir. 2013); *Fierro v. Norton*, 152 Fed. App'x 725, 729-30 (10th Cir. 2005).[20]

SCO faults the district court for insisting on too much precision in the computation of damages.  (SCO Br. at 47-48.)  According to SCO, its experts provided enough evidence to get to a jury on the issue of damages because they

_____

[19] Notably, SCO failed to cite any evidence for this statement.  In fact, before opposing IBM's summary judgment motion, SCO never claimed that its interference damages were "subsumed within" or "overlap[ped]" with its claimed damages for breach of contract or copyright infringement.  Because SCO waited until after fact and expert discovery closed to identify its "indirect interference" damages, despite a specific interrogatory, several Court orders, and an independent obligation to supplement its discovery responses, SCO could not properly make this claim to create a disputed issue of fact.

[20] SCO failed to disclose any admissible evidence of damages during discovery.  IBM's Interrogatory No. 24 asked SCO to describe "all of the alleged damages to plaintiff that were proximately caused by IBM, including, but not limited to . . . the amount of the alleged damages . . . the basis for the alleged damages . . . [and] the precise methodology by which the damages were calculated".  (A1751.)  In response, SCO merely stated that an answer to this interrogatory would be provided "in expert reports", which, as stated, SCO failed entirely to do.  *See Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 313, 321-25 (C.D. Cal. 2004) (eliminating plaintiff's evidence in opposition to summary judgment motion, and granting motion, because plaintiff's evidence was not identified in response to defendant's interrogatories); *see also* Fed. R. Civ. P. 37(c)(1).

assert there was a "crash of the UNIX-on-Intel market", SCO lost revenue with the

"precipitous decline of revenue from Santa Cruz's UNIX-operating systems", and

IBM experienced "gains in revenue".  (*Id.* at 47.)  However, the district court did

not enter summary judgment against SCO because it failed to prove the quantum of

damages with precision; it did so (properly) because SCO failed to prove *any*

amount of damages.  *See L&M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d

1284, 1287 (10th Cir. 2000) ("Unsupported conclusory allegations . . . do not

create a genuine issue of fact.").  Contrary to SCO's suggestion, SCO's expert

reports do not even attempt to describe or quantify its alleged interference

damages.[21]  (TI Opp. at 90.)

### 2.    SCO Cannot Show IBM Caused the Alleged Damages

As the district court held, "Even if SCO had articulated a specific

damages amount tied to specifically identifiable third parties who reduced or

ceased doing business with SCO, SCO's interference claims also fail for a lack of

causation."  (A9676-77.)

With respect to its claim of "direct interference", SCO failed to show

IBM caused any damage to SCO because each of the entities with which IBM

---

[21] SCO's experts do not, for example, quantify (or even discuss) the alleged "loss of support" from HP, Computer Associates, Oracle or Intel that allegedly occurred after the January 2003 LinuxWorld event, or the amount of damage to SCO's business caused by this alleged "loss of support".  SCO does not dispute that its Rule 30(b)(6) witness on this precise subject was utterly incapable of identifying "any damages that SCO may have suffered with respect to a particular company with which SCO alleges IBM interfered".  (TI Opp. at 90.)

allegedly interfered testified that, to the extent its business relationships with SCO

changed, it was for reasons entirely unrelated to IBM.  (*See* A2311; A2375; IBM

A2854; A3066-70; A3074; A4817.)  SCO does not refute this testimony; it simply

asks the Court to disregard it.  Not only is there no basis for doing that (which

would still not carry SCO's burden), but also it ignores SCO witnesses who

testified that IBM did *not* interfere with these business relationships.  SCO

witnesses, for example, have testified that "any change in the relationship between

SCO/Caldera and Computer Associates . . . had to do with SCO's [alleged]

decision not to continue to distribute Linux products" (TI Mot. ¶ 50(a)), and any

change in SCO's relationship with Intel was caused by SCO allegedly "ceasing to

distribute a Linux operating system and Linux products more so" (*id.* ¶ 50(c)).  The

unrefuted testimony of each of the disinterested companies with which IBM

allegedly interfered, coupled with SCO's own admissions, demonstrates

conclusively that SCO has suffered no damages in connection with its "direct

interference" claims.

SCO offered even less evidence of causation as to its theory of

"indirect" interference.  By its own account, SCO's claim for interference with the

"Unix on Intel market" "is not []company specific"; "IBM's taking Linux to the

enterprise *could conceivably* have interfered with everybody, you know";  SCO did

"not allocat[e] a specific dollar amount to each of [those entities] anyway" because

SCO's claim "is more of a tortious interference perspective, business relationships

for the Unix on Intel market as a whole". (TI Opp. ¶ 66(c).) That SCO's business

declined after IBM allegedly interfered with the market as a whole does not

demonstrate that IBM's alleged misconduct (which is inactionable for the reasons

describe above and below) caused SCO's alleged injury.[22] *Truck Ins. Exch. v.*

*MagneTek, Inc.*, 360 F.3d 1206, 1216 (10th Cir. 2004) (affirming summary

judgment because plaintiff failed to adduce non-speculative evidence supporting

causation); *Martinez v. CO2 Servs.*, 12 Fed. App'x 689, 696-97 (10th Cir. 2001)

(same).

        Moreover, as the district court ruled, "there were many other issues in

SCO's business and relationships, at least some of which predated or were entirely

independent of IBM, which could have contributed to SCO's decline, further

interrupting any causal chain between IBM and SCO's alleged injury". (A9677.)

SCO contends the district court did not specifically identify "these issues" (SCO

Br. at 46), but, in fact, it did. The district court describes extensively the problems

adversely affecting SCO's business (independent of any actions of IBM) in its

opinion. (A9656-57; A9667-68; A9677.)

---

[22] If, as SCO claims, its alleged damages are "subsumed within" or "overlap"
with its claimed damages for breach of contract or copyright infringement, then
SCO's interference claims are also barred because (i) SCO's contract and
copyright claims have been dismissed, and SCO has not appealed the dismissal; (ii)
SCO's copyright claim and associated damages had nothing to do with its
interference claims; and (iii) to the extent SCO's interference claims are based on
its now-rejected contract claims, they would be foreclosed under the economic loss
doctrine. *See Associated Diving and Marine Contractors v. Union Pac. RR*, No.
2:01 CV330, 2003 U.S. Dist. LEXIS 21560 *20 (D. Utah July 10, 2003).

"SCO's theory of causation and damages [was] based on a common logical fallacy: *post hoc ergo propter hoc*: because one event happens after another, the first event was a cause of the second event." (A9677.) SCO's own witnesses and documents confirm that not only did IBM's Linux activities not cause SCO's decline, but also that the decisions of SCO's management (and those of its predecessors) did. Because SCO provided no evidence that IBM's alleged interference caused SCO harm, its interference claims fail as a matter of law.

### C.    IBM Did Not Act by Improper Means and IBM's Alleged Conduct Is Privileged

Finally, SCO's interference claims also fail for reasons not reached by the district court. Specifically: (1) none of the alleged acts of interference constitutes "improper means"; and (2) the challenged conduct is privileged as a matter of law.

#### 1.    IBM's Alleged Acts Were Not Undertaken by Improper Means

To establish intentional interference by improper means, SCO was required to show that "the means used to interfere with [its] economic relations are contrary to the law, such as violations of statutes, regulations, or recognized common-law rules." *Leigh Furniture*, 657 P.2d at 308. Improper means commonly include violence, threats, deceit, defamation or disparagement, or violation of some established standard. *Id.*

42

SCO failed to adduce evidence IBM resorted to improper means. SCO claims only that IBM asked HP and others not to do business with SCO. Such requests (even assuming, contrary to fact, they were made) simply do not constitute "improper means" as contemplated by the law. The Utah Supreme Court has stated that "efforts to persuade others . . . not to deal with certain entities" is, in fact, an example of "legitimate persuasion". *Id.* at 303.[23]

### 2.    IBM's Alleged Acts Are Privileged as They Advance IBM's Legitimate Competitive Interests

Although the Utah courts often discuss "the competition privilege" while analyzing the issue of improper purpose, the protection and advancement of legitimate competitive interests in itself is a complete, affirmative defense to a claim of tortious interference. *See Gull Labs., Inc. v. Diagnostic Tech., Inc.*, 695 F. Supp. 1151, 1155 (D. Utah 1988). The undisputed evidence showed that IBM undertook to support Linux in good faith to further its own competitive interests. Dan Frye, co-founder of and Vice President responsible for managing IBM's Linux Technology Center, testified: "IBM undertook its Linux business strategy, and made contributions to Linux, in the good faith belief that these activities were permissible." (TI Mot. ¶62.) SCO's own experts acknowledged that IBM supported Linux for business and competitive reasons. (A3517-18; A3524-27;

---

[23] SCO purports to incorporate allegations of improper means included in its motion papers in the district court. But that is not a permissible basis for an appeal, and even if it were, the means identified in SCO's brief in the district court are refuted in IBM's brief.

A7249; A7254-60.)  SCO itself stated that "competitive reasons [focused on Sun and Microsoft] . . . motivated IBM to formulate a Linux strategy." (TI Mot. ¶63(d).)

## III.   THE DISTRICT COURT PROPERLY DENIED SCO'S MOTION FOR LEAVE TO AMEND TO ASSERT A COPYRIGHT CLAIM

The district court properly rejected SCO's motion to amend under Rule 16(b), because SCO failed to show cause for its delay in seeking leave to amend.  The district court's denial of leave to amend also should be affirmed on the alternative ground that SCO failed to meet the requirements of Rule 15(a).

### A.   SCO Failed To Satisfy Rule 16(b) or the Court's Order of June 10, 2004

Where, as here, a court-ordered deadline to amend has passed, a party seeking leave to amend must satisfy the requirements of Rule 16(b).  *See Birch v. Polaris Indus.*, 812 F.3d 1238, 1247 (10th Cir. 2015).  Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the [Court]".  Fed. R. Civ. P. 16(b).

In this case, after twice allowing SCO to amend its complaint and following substantial discovery, the district court entered an order providing that the court would not further modify the Scheduling Order, which included a deadline for amending the pleadings, absent "extremely compelling circumstances".  (A1082; A1837.)  That is because SCO had already amended its

pleadings multiple times, yet still was threatening to further prolong litigation in the district court.

SCO not only fails to show "extremely compelling circumstances" for yet another amendment to its twice-amended complaint, but it also fails to mention the standard. In any case, SCO came nowhere close to showing even good cause for expanding the case. Thus, the district court did not abuse its discretion in denying leave to amend.

To begin, SCO sought to amend its complaint to add a claim for copyright infringement more than 19 months after commencement of the litigation. By that time, "the deadline for seeking leave to further amend ha[d] long since passed". (A1837.) The district court had already allowed two amendments to SCO's complaint and discovery was about to close. As the district court found, SCO's proposed amendment would have "expanded this already sizable and complex litigation and would [have] served only to delay its resolution". (*Id.*) Even without the proposed claim, it has taken more than 13 years to reach the present appeal.

Moreover, as the district court also found, "SCO delayed seeking leave to assert the proposed cause of action". (*Id.*) It missed by more than eight months the deadline that the district court made clear it would move only upon a showing of extremely compelling circumstances, despite the fact that the company in whose shoes SCO purports to stand (Santa Cruz) plainly knew IBM used the

45

code in question well before SCO filed its original complaint. Although SCO

claimed to have only recently discovered that IBM copied SCO's UnixWare/SVr4

code into its AIX for Power product, SCO had long been in possession of the very

facts that it claimed serve as the basis for its new infringement claim. As stated,

the JDA specifically envisioned IBM's use of the code in IBM's AIX products.

Moreover, SCO (not just Santa Cruz) was well aware (or would have been had it

exercised due diligence) that IBM did in fact incorporate certain UnixWare/SVr4

code into its AIX for Power product.[24]  (A737-38; A742; A744; A759; A776;

A780; A822-23; A863-76.)

> Thus, SCO had no excuse for waiting eight months after the deadline

for amending pleadings had passed to bring its motion.

### B.    Leave To Amend Is Improper Under Rule 15(a)

> The district court also properly denied SCO's motion for leave to

amend under Rule 15(a). A district court does not abuse its discretion in denying a

motion to amend where there is (1) undue delay, (2) undue prejudice to the

opposing party, (3) bad faith or dilatory motive on the part of the movant or

---

[24] Even if SCO were not imputed with Santa Cruz's knowledge (which it is, since SCO claims to be Santa Cruz's successor-in-interest and many of the above-cited documents were produced to IBM by SCO), if SCO had exercised any diligence during and upon its acquisition of Santa Cruz's assets in 2001, it would have uncovered the facts it now claims it only learned upon review of IBM's document production in this case.

(4) futility of the proposed amendment.  *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  In this case, all four factors weighed against SCO's motion.

### 1.    SCO Unduly Delayed Moving To Amend Its Complaint

As stated, SCO delayed unduly in seeking leave to amend.  SCO brought its motion more than 19 months after it filed its original complaint and eight months after the deadline imposed by the district court for amending pleadings.  As SCO could not articulate a credible or justifiable reason for this substantial delay—since, as discussed, SCO knew (or should have known) of the facts purportedly supporting its new claim for copyright infringement before it filed its original complaint—the delay alone is reason to deny the motion.  *See U.S. West*, 3 F.3d at 1365-66; *see also Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).

### 2.    IBM Would Have Been Unduly Prejudiced by the Addition of the Copyright Claim

In addition, the district court properly exercised its discretion in denying SCO's motion because allowing SCO to amend would have unduly prejudiced IBM.  IBM had long demonstrated a legitimate interest in having the important issues presented by SCO's lawsuit resolved promptly, so that IBM and other Linux users could go about their business without any of the fear, uncertainty and doubt concerning Linux that SCO was fostering in the marketplace.  Despite SCO's assertions to the contrary, allowing SCO to add a new claim at the eleventh

47

hour would have expanded the scope and precluded a prompt resolution of the case.

SCO's proposed new claim would have radically expanded the case at the eleventh hour.  Whereas SCO identified 326 lines of allegedly infringing code in Linux (as to which the parties took discovery for several years), SCO's proposed copyright claim regarding Project Monterey purportedly implicated more than 780,000 lines of additional code, which, by any reasonable estimate, would have required far more discovery.  (*See* Dkt. No. 337 at 16.)  Moreover, SCO's proposed new claim raised issues concerning the negotiation, execution and performance of the JDA between Santa Cruz and IBM and the specific contents of IBM's AIX for Power product, which were not then part of this case.

SCO's argument that its proposed claim for copyright infringement would not have been prejudicial, because it did not raise any issues beyond those already in the case, is based on a misreading of IBM's Ninth Counterclaim.  The Ninth Counterclaim sought only a declaration that SCO's purported termination of IBM's UNIX System V licenses—the agreements specified in the first four counts in SCO's Second Amended Complaint—was invalid and that SCO thus had no claim for copyright infringement based on such purported termination.[25] (A232-33.)  IBM's Ninth Counterclaim did not seek any declaration concerning

---

[25] In fact, IBM offered to stipulate to this limitation on its Ninth Counterclaim.

any of IBM's rights and obligations under the Project Monterey JDA. Indeed, it would have made little sense for IBM to bring a claim against SCO seeking a declaration of rights relating to the JDA since SCO was not a party to the JDA in the first place.

Furthermore, SCO's claim that the district court abused its discretion in "artificially narrowing IBM's counterclaim so it could find that SCO's proposed copyright claim would 'expand' the litigation" is meritless. As an initial matter, the district court granted summary judgment for IBM on its Ninth Counterclaim, and SCO elected not to appeal that ruling, such that it cannot now assign error indirectly. *See Grynberg Prod. Corp. v. Susman Godfrey, L.L.P.*, No. 10-1248, 2012 U.S. App. LEXIS 3316 (10th Cir. Feb. 16, 2012); *Crocker v. Piedmont Aviation*, 311 U.S. App. D.C. 1, 49 F.3d 735, 739-40 (1995). In any case, SCO's contention that the district court narrowed IBM's claims so that it could find that SCO's proposed copyright claim would expand the case: (i) impugns the district court's motives without evidentiary support; (ii) ignores the fact that IBM (as author of its counterclaim) was permitted to assert a narrow construction; and (iii) disregards the fact that IBM could not have brought the declaratory judgment counterclaim SCO contends IBM brought because there was no case and controversy as to that claim. (Dkt. No. 407 at 8.)

### 3.    SCO Moved To Amend Its Complaint Solely in an Attempt To Delay Further the Resolution of the Case

The district court was also justified in denying SCO's motion because it was plainly brought to seek further delay in the resolution of this case. As explained in IBM's briefing before the district court, it was SCO's strategy from the outset of this litigation to seek to delay the proceedings, apparently to further the fear, uncertainty and doubt that SCO had created concerning Linux and IBM's products and services.[26]

SCO's motion to amend was just part and parcel of SCO's delay tactics. In particular, the motion was crafted specifically to evade the district court's admonition in its June 10, 2004 Order that the scheduling order in this case would not be modified again "absent extremely compelling circumstances". (Dkt. No. 177 at 3; A1837.) After the district court issued the June 10, 2004 Order, SCO regularly noted in briefs its dissatisfaction with the discovery schedule and its intention to bring yet another motion to amend the scheduling order. For example, SCO argued on September 24, 2004, in support of its ironically-titled motion to "enforce" the scheduling order, that "a modification of the schedule will inevitably

---

[26] SCO successfully delayed the deadline for amending pleadings prior to the motion at issue on this appeal. The district court's original scheduling order issued on July 10, 2003 established October 1, 2003 as the deadline for the amendment of pleadings. SCO filed its First Amended Complaint on July 22, 2003 and, on September 26, 2003, filed a motion (which IBM opposed) seeking to extend the deadline for amending pleadings until February 4, 2004. The district court granted the motion and SCO filed its Second Amended Complaint on the last day permitted, February 4, 2004.

50

become necessary" and that SCO intended to "make an appropriate motion" after the magistrate judge ruled on certain discovery issues. (*See* Dkt. No. 308 at 18.) Instead of making any properly-supported motion to amend the scheduling order (or waiting for the magistrate to rule, for that matter), SCO instead attempted to help itself to an extension by filing a motion to assert a claim against IBM that required new and different discovery just a few months before discovery was supposed to end. If the district court had granted SCO's motion to amend, it would no doubt have been followed immediately by a motion from SCO seeking to extend discovery. The proposed claim implicated hundreds of thousands of lines of source code with which SCO had never before taken issue. *See, e.g.*, *D'Zurella v. Kansas*, No. 90-3202, 930 F.2d 33, 1991 WL 47101, at **1 (10th Cir. Mar. 18, 1991) (identifying "prejudice to defendants from the need to undertake additional discovery" as part of rationale for affirming denial of motion to amend complaint).

The timing of SCO's motion to amend is particularly instructive. SCO filed the motion on October 14, 2004, just two weeks after the district court denied SCO's emergency request for a scheduling conference, at which SCO by its own admission intended to propose an extension of discovery. This timing is not coincidental. It was clear from SCO's actions that, at least as of August 2004, SCO was in possession of the very IBM internal documents that it appended to its motion—indeed, it was disclosing the substance of those documents (we believe improperly) to the media. (A878-89; A881-82.) Yet, notably, SCO did not seek to

51

amend its pleadings based on such documents until after the district court denied

SCO's attempt informally to amend the scheduling order.

The facts and circumstances surrounding SCO's motion reveal that

SCO's true motivation was merely to delay the case unnecessarily.  That is not

proper, and the district court correctly denied SCO's motion.  A party may not use

the amendment process as a tactic for obtaining expanded discovery.  *See, e.g.*, *Sil-*

*Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518-19 (10th Cir. 1990).  Nor can SCO be

heard to blame IBM for SCO's delay by claiming that IBM improperly delayed the

production of documents.  IBM satisfied its discovery obligations; the district court

never ruled otherwise; and SCO's brief fails altogether to substantiate its claim.

### 4.     The Proposed Copyright Claim Is Futile

Finally, the district court was justified in denying leave to amend

because the proposed claim was futile, and a court "properly may deny a motion

for leave to amend as futile."  *Bauchman v. West High School*, 132 F.3d 542, 562

(10th Cir. 1997).  SCO's proposed claim was futile because SCO sought to bring it

in the wrong forum, and it was barred by a contractual statute of limitations.

As stated, Section 22.3 of the JDA provides in relevant part:  "Any

legal or other action related to a breach of this Agreement must be commenced no

later than two (2) years from the date of the breach in a court sited in the State of

New York".  (A454-55 § 22.3.)[27]

Under Section 22.3 of the JDA, SCO's proposed claim for copyright

infringement would have been subject to dismissal because it was not brought "in a

court sited in the State of New York".  For that reason alone, SCO's copyright

claim would have been futile.  Notably, SCO makes no mention of the forum

selection clause, and offers no explanation as to why it never timely sought to

proceed in New York as required by the JDA.

Moreover, SCO's proposed claim was time-barred, because it was not

brought within the two-year statute of limitations provided for in Section 22.3.  In

its own proposed complaint, SCO alleged that IBM began distributing the AIX for

Power product containing the allegedly infringing code "at least by October 2000".

---

[27] Section 22.3 of the JDA plainly applies to SCO's claim for copyright
infringement because the claim is "related to" an alleged breach of the JDA.  IBM
could only have been liable for copyright infringement if IBM exceeded the scope
of the license to the purportedly copyrighted materials granted under the JDA.
Thus, SCO's proposed claim for copyright infringement necessarily depended on
the interpretation and meaning of the JDA.  In such circumstances, courts have
routinely held that contractual forum selection clauses apply to other claims
brought by a plaintiff, including claims for copyright infringement.  *See e.g.*,
*Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir.
1994).  Moreover, although Section 22.3 does not expressly mention a claim for
copyright infringement, Section 20.1 expressly excepts claims for copyright
infringement from the $5 million limitation on liability for actual damages.  (A453
§ 20.1.)  Thus, the JDA expressly contemplated that copyright claims, related to a
breach of the JDA, might arise.  The fact that the parties expressly excepted
copyright claims from the $5 million limitation provision in Section 20.1, but did
not except copyright claims from the forum and limitations provisions in Section
22.3, demonstrates that the parties intended Section 22.3 to govern copyright
claims.

(A389.)  Thus, under SCO's own theory, IBM first breached the JDA (and

therefore began to commit the alleged copyright infringement) at least as early as

October 2000, meaning SCO was required to bring a claim against IBM by

October 2002.[28]  As SCO did not seek to bring the proposed claim until October

*2004*, the claim was barred by the terms of the JDA.

       Any claim by SCO that IBM waived the right to enforce Section 22.3

by filing its Ninth Counterclaim against SCO is baseless.  Section 22.11 of the

JDA provides unambiguously that "[n]o . . . waiver of any provision of this

Agreement shall be effective unless it is set forth in a writing which refers to the

provisions so affected and is signed by an authorized representative of each Party."

(A456.)  IBM never executed such a writing setting forth its intention to waive

Section 22.3 of the JDA, and thus cannot be held to have waived its rights under

that provision.  Moreover, and as discussed above in Section III.B.2, IBM's Ninth

Counterclaim does not, and was never intended to, seek a declaration concerning

IBM's rights under the Project Monterey JDA with Santa Cruz.  Rather, the Ninth

Counterclaim sought a declaration that IBM's continued distribution of AIX after

SCO's purported termination of IBM's UNIX System V licenses from AT&T did

---

[28] SCO cannot rely on its contention that it did not discover IBM's allegedly
wrongful conduct until just before it sought leave to amend to avoid Section 22.3.
As an initial matter, the time limitation in Section 22.3 explicitly runs "from the
date of the breach", not the date that such breach was discovered.  Moreover, as
discussed above (Section III.A), SCO plainly was aware or should have been
aware of IBM's conduct by at least October 2000.

not infringe any of SCO's purported copyrights.[29]  There was therefore no basis for the district court to infer, as SCO suggests it should have, that IBM waived its rights under Section 22.3 by asserting its Ninth Counterclaim in this case.

In sum, since SCO's proposed copyright claim should have been dismissed under Section 22.3 of the JDA because it was brought both in the wrong forum and after the contractual time limitation had expired, allowing the claim to be added to the case would have been futile.  SCO's motion for leave to amend was therefore properly denied for yet another reason.

---

[29] Any argument that the interests of judicial economy justified overlooking the forum selection clause is baseless for the reasons detailed in IBM's brief in the district court.  (*See* Dkt. No. 337 at 16.)

## CONCLUSION

This Court should affirm the Judgment in favor of IBM.

Dated:  November 2, 2016

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by
_____
/s/ David Marriott
Evan R. Chesler
David Marriott

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
echesler@cravath.com
dmarriott@cravath.com

SNELL & WILMER, L.L.P.

by
_____
/s/Amy F. Sorenson
Amy F. Sorenson
Amber M. Mettler

15 W. South Temple, Suite 1200
Salt Lake City, UT 84101
(801) 257-1900
asorenson@swlaw.com
amettler@swlaw.com

*Attorneys for Defendant-Appellee*
*International Business Machines*
*Corporation*

## CERTIFICATE OF COMPLIANCE

I certify that this brief's typeface and type style comply with Fed. R. App. P. 32(a)(5) and (6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font. I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,808 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 10th Cir. R. 32(b). I further certify that no privacy redactions are required under this Court's Policies and Procedures.

Dated: November 2, 2016

CRAVATH, SWAINE & MOORE LLP,

by

_____
/s/ David Marriott
David Marriott
A member of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
dmarriott@cravath.com

*Attorneys for Defendant-Appellee*
*International Business Machines*
*Corporation*

## STATEMENT REGARDING ORAL ARGUMENT

IBM respectfully requests that this Court hold oral argument on this

appeal.  IBM believes that the decisional process would be aided by oral argument.

Dated:  November 2, 2016

CRAVATH, SWAINE & MOORE LLP,

by
_____
/s/ David Marriott
David Marriott
A member of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
dmarriott@cravath.com

*Attorneys for Defendant-Appellee
International Business Machines
Corporation*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that this Brief electronically filed with Clerk of the
Court for the United States Court of Appeals for the Tenth Circuit in Digital Form
via the Court's CM/ECF system has been scanned for viruses with Symantec
Antivirus version 12.1.6 (which is updated daily), and, according to that program,
is free of viruses.  I further certify that, pursuant to Local Rule 31.5, seven hard
copies of this Brief will be delivered to the Office of the Clerk of this Court on or
before November 4, 2016, and the hard copies will be exact copies of the Brief as
electronically filed herein.

Dated:  November 2, 2016

CRAVATH, SWAINE & MOORE LLP,

by

_____
/s/ David Marriott
David Marriott
A member of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
dmarriott@cravath.com

*Attorneys for Defendant-Appellee*
*International Business Machines*
*Corporation*

59

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2016, I caused the foregoing Brief of Defendant-Appellee International Business Machines Corporation to be electronically filed with Clerk of the Court for the United States Court of Appeals for the Tenth Circuit using the appellate CM/ECF system.  Since all parties in the appeal are registered CM/ECF users, all parties will be served by the appellate CM/ECF system.

CRAVATH, SWAINE & MOORE LLP,

by
  _____
        /s/ David Marriott
        David Marriott
        A member of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
dmarriott@cravath.com

*Attorneys for Defendant-Appellee International Business Machines Corporation*